UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **SANDRA EKPENYONG**, an individual<br><br>**Plaintiff,**<br><br>vs.<br><br>**XULON PRESS, INC., SALEM MEDIA GROUP, INC, STUART W. EPPERSON, THOMAS M. FREILING, CHRIS HILL, CHANDRA D. THOMAS, JOSE MEDINA** and **TRACY K. SULLIVAN,**<br><br>**Defendants.** | CASE NO._____<br><br><br>**COMPLAINT FOR COPYRIGT INFRINGEMENT**<br><br><br>**REQUEST FOR JURY TRIAL** |

Plaintiff **SANDRA EKPENYONG**, *Pro Se,* alleges as follows:

## JURISDICTION AND VENUE

1. The court has original jurisdiction of this action under 17 U.S.C. §501, *et seq.*, and 28 U.S.C. §§ 1338(a) and 28 U.S.C. §§ 1338(b).

2. Venue in this district is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the within claims occurred in this judicial district, and under 28 U.S.C. § 1400(b) in that it is a judicial district where defendant has committed acts of copyright infringement and had a regular and established place of business.

## THE PARTIES

3. Plaintiff, **SANDRA EKPENYONG** ("Plaintiff") is a resident of 9672 Celtic Place, Waldorf, MD 20601, that does substantial business in Silver Spring, MD.

4. Defendant, **XULON PRESS, INC.** ("Xulon Press") is, on information and belief, a Florida Foreign Profit Corporation with an address of 380 Crown Oak Center Drive, Longwood, FL 32750 and 2301 Lucien Way, Suite 415, Maitland, FL 32751.

5. Defendant, **SALEM MEDIA GROUP**, **INC.** ("Salem Media") is, on information and belief the holding company of Xulon Press, and is registered as a Delaware corporation, who shares ownership of Xulon Press assets and has an address of Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

6. Defendant, **STUART W. EPPERSON** ("Epperson") is owner / founder of the Salem Media Group, Inc. and is an American radio broadcaster, internet content provider, and magazine and book publisher based in Irving, Texas, targeting audiences interested in Christian values and what it describes as "family-themed content and conservative values assets and has an address of Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

7. Defendant, **THOMAS M. FREILING** ("Freiling) is listed as a Founder of Xulon Press and Xulon Press is a hybrid publisher owned by the Christian publishing company Salem Media Group. In 2007 it claimed to be "the largest publisher of Christian books in North America", claiming more than 3,900 print-on-demand titles published by 2007 and is a parent company of Salem Media Group with an address 10375 Welhams Lane, Marshall, VA, 20115.

8. The true names and capacities of the defendants named herein as **CHRIS HILL,** ("Hill") **CHANDRA D. THOMAS,** ("Thomas") **JOSE MEDINA** ("Medina") **TRACY K. SULLIVAN,** ("Sullivan") whether individual, corporate, associate, consultant, service or

author representative, agent or otherwise, and Plaintiff therefore sues said defendants by nature of their being complicit and materially participated as publishing agents of Xulon Press and Salem Media in committing acts of copyright infringement and had a regular and established place of business whose address is 2301 Lucien Way, Suite 415, Maitland, FL 32751 and a Registered Agent address of 380 Crown Oak Center Dr, Longwood, FL 32750.

9. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein is legally responsible for the events and happenings hereinafter alleged and legally caused injury and damages proximately thereby to Plaintiff as alleged herein. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants participated in and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom while acting as representatives of Xulon Press and Salem Media.

10. Plaintiff is informed and believes, and on that basis alleges, that each Xulon Press and Salem Media's individual employees, corporate, associate, consultant, service or author representative, agent or otherwise, i.e. **CHRIS HILL, CHANDRA D. THOMAS, JOSE MEDINA,** and **TRACY K. SULLIVAN,** were empowered to act as the agent, servant and/or employees of each other, and that all the acts alleged to have been done by each of them were authorized, approved and/or ratified by each of them while acting as representatives of Xulon Press and Salem Media.

11. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants participated in and is in some manner responsible, in concert and materially empowered, authorized, and approved each Defendant to act as agents for the acts described in this

Complaint and any damages resulting therefrom and Plaintiff, was never aware that Xulon had been offering Plaintiff's copyrighted material for sale on websites, bookstores, or any other media outlets from 2010 up to and including the date of filing this Complaint, wherein infringements by Xulon had been unknowingly occurring for up to fourteen (14) years.

## BACKGROUND

12. Plaintiff repeats and realleges the averments contained in paragraphs 1-11 as though fully set forth herein.

13. The journey of writing the book *"Biblical Dysfunctional Families That Made It And Now So Can You No More Excuses"* may read like a Hollywood story to many but it is the true story of loss of everything, human struggle, ability to start all over again and the power of faith in God to press believe that through my own failures that I may inspire someone else to make the same journey and come out on the other side.

This book was written after Plaintiff had lost everything; Plaintiff's inheritance that was awarded to Plaintiff due to Plaintiff's late mother's Geneieve Ekaete's untimely demise at the hands of Howard University Hospital. As Plaintiff struggled through the thoughts of depression after losing Plaintiff's home, car and was unable to finish college. As Plaintiff stood jobless on the balcony of Plaintiff's newly foreclosed condominium, for a moment Plaintiff considered the 'S' word – suicide but realized that while Plaintiff's mother did not get to finish writing her story due to choices outside of her control, that did not have to be Plaintiff's story.

Though still depressed, Plaintiff found herself couch surfing at Plaintiff's father's friend's house and job hunting. Plaintiff was woken up at 3:00 am by his wife who told me

4

unexpectedly that Plaintiff had to leave first thing in the morning. So, with all the little belongings that Plaintiff had left, Plaintiff drove around Maryland what seemed like hours praying to God to take Plaintiff to a place that would let me rent until Plaintiff found a job. It would seem like God answered my prayer in the form of a little apartment located in Takoma Park, MD. he property manager agreed to let Plaintiff rent without a job if Plaintiff would try and get something in a month or two and that is when the beginning of Plaintiff penning the book Biblical Dysfunctional Family.

Plaintiff started working temporary jobs and then Plaintiff was able to invest in a personal computer. One day after leaving church Plaintiff was inspired by the fact that many people hated reading their Bibles because they could not understand the relevancy of Bible stories to modern times. And it was at that precise moment Plaintiff decided to write a book about twelve dysfunctional families in the Bible but put a modern twist to it that people would relate to. Afterall everyone claims that church is a hospital, but no-one was really addressing church dysfunctionality and that became Plaintiff's mission.

Plaintiff will be the one through the power of writing, hold the mirror to the church to look at all our flaws, limitations but also discover the power of love, reconciliation and change how we see each other. Plaintiff will write a book to open the conversations that we were not courageous enough to have and perhaps find healings and the tools needed to build healthy homes and so for two years Plaintiff wrote. While writing, Plaintiff also did books on poetry and after getting a series of rejection letters, Plaintiff decided to copyright my book in 2006 and stick a copy of it in my drawer and forget about it.

A call for a job offer would change the course of Plaintiff's life. Plaintiff got in for a job

5

interview as my last contract had ended and Plaintiff had barely enough gas to get to the interview and back, but Plaintiff was extremely hopeful. Plaintiff will never forget what the interviewer said, which was literally that he never read my resume, but my cover letter grabbed his interest so much that he wanted to meet Plaintiff based on what Plaintiff had written. Plaintiff was confused and asked him what he meant, and he told Plaintiff – you are meant to write and not sit behind a desk in some office. How could he tell that Plaintiff was a writer? How could he by just reading Plaintiff's cover letter surmise who I was as a person? He told me that he could offer me a job but that he would recommend that Plaintiff use my talent of writing and impact the world. No – I did not get the job but Plaintiff got my faith back and so Plaintiff went and unburied my manuscript and started looking for a Christian publishing company which ended up being Xulon Press Publishing House.

The truth is that the number of challenges that Plaintiff faced was almost insurmountable, which started with the embezzlement of Plaintiff's inheritance to homelessness and living off peanut butter as a meal was indeed life changing and humbling. Plaintiff also had to come to terms with the fact that Plaintiff never truly grieved for Plaintiff's mother as a little child, in which writing this book forced Plaintiff to do so. But the pain of this journey also taught me resilience, determination, commitment, and sacrifice. One major lesson that writing this book has shown Plaintiff that you must fight for yourself and along the way, you will meet people who hear your story and want to fight beside you.

And while Plaintiff continued to pick up the pieces, Plaintiff was determined to continue to pursue the truth, inspire others through Plaintiff's preaching and writing. Plaintiff understands that sometimes in the darkest places, if you can find a glimmer of light you

can too defy all odds and forge your own path towards love, peace and redemption.

14. Plaintiff is an American author who has used her education, experience, talent, and creatively authored "*Biblical Dysfunctional Families That Made It And Now So Can You No More Excuses*" which represents a five-year investment of time, research, and creative effort on Plaintiff's part, and to which Plaintiff holds the exclusive rights to reproduce, distribute, and display the content of this book, it's brand, website and social media presence using the name Sandra Ekpenyong.

## GENERAL ALLEGATIONS AND INFRINGEMENT TIMELINE

15. Plaintiff repeats and realleges the averments contained in paragraphs 1-14 as though fully set forth herein.

16. At all times relevant hereto, Plaintiff has been and still is the holder of the exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et. seq.*, and all amendments thereto) (the "Copyright Act") to reproduce, distribute, display, or license the reproduction, distribution, and/or display of her audiovisual, multimedia work, listed on USPTO ISBN 1607910853 attached hereto as Exhibit A, which is the subject of this action (referred to herein as the *"Biblical Dysfunctional Families That Made It And Now So Can You No More Excuses"* by Sandra Ekpenyong (December 2008)" ISBN 978-1607910848") throughout the United States, Australia and United Kingdom.

17. Plaintiff is an entrepreneur who has used her own struggles, life experiences, talent, and creativity developed over years of hard work as an author to develop, write and publish her own book, copyrighted in 2006.

18. Plaintiff began communicating with Xulon Press 2006-2007 to inquire and understand the terms of Xulon's publishing packages.

19. Plaintiff, on or about August 28, 2008, entered into Xulon Press Publishing Services Agreement ("Agreement") and paid the required fee of $1,599.00. Said Agreement and receipt of payment is attached hereto as Exhibit B. (Unfortunately, Plaintiff's fully executed Services Agreement was destroyed due to a recent computer crash deleting many documents related to this matter.)

20. On November 09, 2008, Plaintiff received from Xulon Press a W-9 facilitating the collection of my royalties of which I signed and returned to Xulon Press on November 10, 2008, and is attached hereto as Exhibit C.

21. On December 22, 2008, Plaintiff sent an email to Xulon Press regarding the website that Xulon represented they were to build for Plaintiff but did not get any response. Further, it specifically states in the Agreement "The back cover text submitted by the Author will be used for marketing purposes on our distribution partners' websites and on our online bookstore (according to the package you purchased)." None of this was done, nor was it ever addressed after numerous emails regarding same. Plaintiff merely received emails from Xulon's 'agents' and 'author representatives' referring to other book retailers and never addressing the subject specifically leaving Plaintiff in the dark with respect to how Plaintiff's book would be marketed. The initial email and the response is attached as Exhibit D.

22. On January 06, 2009, Plaintiff received an email from **CHRIS HILL**, the Xulon Press representative, informing Plaintiff that my book was now published and that I would be

receiving complementary paperback author copies of my work within 7 to 10 days, a copy of which is attached as Exhibit E.

23. On month later, Plaintiff was still not in receipt of complementary paperback author copies which was represented by **CHRIS HILL** in his email of January 6, 2009. On February 3, 2009, I made a follow-up phone call and emailed **CHRIS HILL** asking when my books would be released as Plaintiff had not gotten any complementary copies of the books as **CHRIS HILL** had promised back on January 06, 2009. The complementary copies were necessary to enable Plaintiff to review for any further editing, check paper used, check graphics for cover, all of which needed accomplished before Plaintiff could place a book order to begin author distribution and marketing. The complementary copies were never received, although I was able to submit corrections through the Xulon Press Author's Center database on Xulon's website.

24. On April 09, 2009, I ordered 251 copies of my book for $2014.79, along with 50 complementary copies and the order was confirmed via an email from **CHRIS HILL** dated April 14, 2009, attached hereto as Exhibit F.

25. On August 24, 2009, I emailed **JOSE MEDINA,** attached hereto as Exhibit G requesting the return of my 'author' file as Xulon Press had become very unresponsive to my emails and phone calls after the publication of my book. That included Xulon's failure to create an author website as they had promised. Xulon instead, began bouncing me off to different people to speak to that new nothing of my situation and again, without getting any resolution to my concerns and frustrations. **JOSE MEDINA** replied with an email requesting $100 for the full cover file of your book which is the front cover, spine and back

cover as a PDF file which Plaintiff had previously paid over four months prior to this response. Plaintiff followed up with a phone call and was informed that Plaintiff would have all files sent via email which I received and considered my relationship with Xulon Press ended.

**COUNT I**
**INFRINGEMENTS OF COPYRIGHT**

26. Plaintiff repeats and realleges the averments contained in paragraphs 1-25 as though fully set forth herein.

27. On July 09, 2010, almost a full year after I severed the relationship with Xulon, I emailed **JOSE MEDINA, CHRIS HILL** attached as Exhibit H, respectively requesting why my friends had discovered pages of my book on Google and Plaintiff reached out to Google directly via telephone who informed Plaintiff that they had the permission of Plaintiff's publishing company Xulon Press to publish my work online. I requested that the issue be resolved immediately. Screenshot of Plaintiff's book's availability on Google for purchase delineating Xulon Press as seller, as well as listings on Amazon.com, BarnesandNoble.com, Books-A-Million, and Indie Bound, none of which had Plaintiff's expressed authority for the book's sale, as the relationship with Xulon had been terminated August 24, 2009, and attached as Exhibit I is a Google screenshot from April 24, 2024 proving Plaintiff's book is being offered for purchase by Xulon Press and infringing upon Plaintiff's copyright.

28. On July 13, 2010, I received a response from **CHANDRA THOMAS** attached as Exhibit J informing me that indeed my book had been uploaded to Google.com preview and that they would remove my book per my request which I asked her to do. As of the date of this

10

Complaint Plaintiff's book is presently being offered for purchase by Xulon Press on Google Books infringing on Plaintiff's copyright.

29. On October 28, 2010, Plaintiff sent out another email request stating that Plaintiff wanted all files returned to me again for the second time as when I called her via telephone, **CHANDRA THOMAS** informed me that she was new to my account and was unaware of what the previously account representatives (Jose Medina and Chris Hill) may have done. In this email thread, **CHRIS HILL** and **JOSE MEDINA** had also been notified of the infringements at Google Books and had been provided a direct url to the infringement. On October 29, 2010, Chandra assured me of the return of my entire file the second time in which she assured me that I would have no additional issues moving forward. Plaintiff's book is still presently being offered for purchase by Xulon Press on Google Books infringing on Plaintiff's copyright. Said email is attached as Exhibit K.

30. On November 1, 2010, I contacted **CHANDRA THOMAS** by email asking for an official document with Xulon Press letterhead stating that Plaintiff had exited with the entirety of Plaintiff's book files. **CHANDRA THOMAS** sent my files without the official exit letter and when I called **CHANDRA THOMAS**, she told me that I did not need a letter via email that returning of my files via email was sufficient along with the email will serve as exit proof from Xulon Press. Plaintiff's book is still presently being offered for purchase by Xulon Press on Google Books infringing on Plaintiff's copyright. Said email is attached as Exhibit L.

31. On November 29, 2013, Plaintiff received a new email from Xulon Press Representative Christopher Gonzalez requesting a renewal fee for Plaintiff's book *Biblical Dysfunctional*

*Family* **to keep Plaintiff's book in distribution worldwide**. Plaintiff immediately followed with a call to Christopher who informed me that my book was still in the system **and was being distributed worldwide** and I would have to contact Chandra as my account representative. Plaintiff contacted **CHANDRA THOMAS** via phone but I received no callback and so Plaintiff sent her an email reminding her that she handled the termination of my contract in 2010, and removing Plaintiff's book from distribution and that Plaintiff wanted her to resend the entirety of Plaintiff's book files again and that I have not received any payment of book sales or royalties to-date even though Plaintiff's book was being made available for purchase by Xulon Press infringing on Plaintiff's copyright. On December 03, 2013, **CHANDRA THOMAS** finally responded to my email informing me that everything was taken care of and followed up with a phone call. Said email is attached as Exhibit M.

32. On May 16, 2021, a friend Kabby Gaithaga, called me on her return to the US from Nairobi, Kenya to inform me that my book Biblical Dysfunctional Family was in one of the largest bookstore chains in Kenya. I asked her if she purchased a copy, and she stated no because she concluded that she could get a free autographed copy directly from Plaintiff. Kabby informed me that Plaintiff's book was costing in the hundreds of dollars and that is why Kabby chose not to purchase a copy. Upon going on-line, much to my outrage, I found copies of my book in hardcopy raging from the price of $100- $1,000 as a collector edition in direct violation of Plaintiff's copyright.  See attached Exhibit N.

33. On or about June 2021, Plaintiff went online to Amazon.com and discovered that my friend, Kabby Gaithaga was correct in the sense that my book was still being sold by Xulon Press

on different book platforms online including Barnes and Nobles. I immediately contacted Amazon.com who told me that they did not have a contract with Plaintiff and therefore could not remove my book without the consent of Xulon Press. As of the date of filing this Complaint, Xulon Press is offering Plaintiff's book available for purchase by infringing on Plaintiff's copyright. See attached Exhibit O from Amazon.com and Barnes and Noble.com.

34. On or about June 1, 2021, Plaintiff contacted Xulon Press and never got a response and so Plaintiff sought an attorney who sent Xulon Press a cease-and-desist letter after doing their due diligence in which neither Xulon Press nor Salem Media Group did not respond. The Cease and Desist letter was also mailed via USPS Certified Mail and was not picked up. As of the date of filing this Complaint, Xulon Press is offering Plaintiff's book available for purchase by infringing on Plaintiff's copyright. See attached Cease and Desist Letter marked Exhibit P.

35. That as of the date of the filing of this Complaint, there are currently nine (9) Infringements Of Copyright By Xulon Press and their agents, of Plaintiff's intellectual property for which Plaintiff has never received any compensation, or royalties. Plaintiff never released any rights for publication to Xulon Press, whose contractual relationship had ended ; however, Xulon Press and its agents continued to release Plaintiff's book for publication to and including May 8, 2024, despite Plaintiff's ownership of the intellectual property.

## COUNT II
## EGREGIOUS INFRINGEMENTS OF COPYRIGHTED MATERIAL

36. Plaintiff repeats and realleges the averments contained in paragraphs 1-35 as though fully set forth herein.

37. On April 15, 2024, Plaintiff made a new discovery that Xulon Press has released a book titled *"Dysfunctional Families of the Bible and Their Twelve Redeeming Qualities, How Do They Impact Us?,"* by Sherly Mills which Plaintiff believes to be an unauthorized reproduction of copyrighted language from my original book *"Biblical Dysfunctional Families That Made It."* As of the date of filing this Complaint, Xulon Press is offering Plaintiff's book and the imposter book available for purchase by infringing on Plaintiff's copyright. See attached Exhibit Q.

38. That as of the date of the filing of this Complaint, there are currently twenty-seven (27) Egregious Infringement Of Copyrighted Material incidents of national and global sales by Xulon Press of Plaintiff's intellectual property for which Plaintiff has never received any compensation, or royalties. Plaintiff never released any rights for publication to Xulon Press, whose contractual relationship ended in what Plaintiff thought was 2009 but possibly not recognized until 2010; however, Xulon Press continued to release Plaintiff's book for publication up to and including May 8, 2024, on at least 27 websites, reaping the financial benefits of infringed work despite Plaintiff's ownership of the intellectual property. See attached Exhibit R.

## CLAIM FOR RELIEF
### (Copyright Infringement Against All Defendants)

39. Plaintiff repeats and realleges the averments contained in paragraphs 1-38 as though fully set forth herein.

40. Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, and egregious infringement of copyrighted material plus attorneys' fees, where applicable.

41. The above-described conduct by Defendants and agents constitutes nine (9) willful Infringements Of Copyright by Xulon Press and their agents under the Copyright Act.

42. The above-described conduct by Defendants, Xulon Press, Inc., Salem Media Group, Inc constitutes twenty-seven (27) willful Egregious Infringements Of Copyrighted Material under the Copyright Act.

43. As a result of the above-described conduct by Defendants, Plaintiff has been infringed upon a minimum of thirty-four (34) times and is seeking damages in the amount of Five Million Four Hundred Thousand Dollars and No/100 ($5,400,000.00) or an amount to be proven at trial.

44. By reason of the copyright infringement described above, Plaintiff is entitled to recover Defendants' profits, otherwise known as "Author Royalties," to the extent that the same are not included as part of Plaintiff's damages. The Plaintiff shall be entitled to Author Royalties from Defendants' infringements calculated pursuant to the Xulon Press Publishing Agreement which states, in part:

> "Xulon Press shall pay the Author a royalty for each copy sold, minus print cost and returns. The royalty rate for copies sold is 100% of net receipts. Net receipts are defined as the total amount of money Xulon Press receives for sales, minus print and shipping costs and any applicable sales commissions. Authors shall receive no royalties on copies they purchase."

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

1. For an Order enjoining Defendants, their officers, agents, employees, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from:

    a)    infringing, or contributing to or participating in the infringement by others the illegal copyright of *the "Biblical Dysfunctional Families That Made It And Now So Can You No More Excuses" by Sandra Ekpenyong*, or acting in concert with, aiding and abetting others to infringe said copyright in any way;

    b)    copying, duplicating, selling, licensing, displaying, distributing, or otherwise using without authorization copies of *"Biblical Dysfunctional Families That Made It And Now So Can You No More Excuses" by Sandra Ekpenyong* to which Plaintiff is owner of the exclusive rights under the respective copyrights or derivative works based thereon;

2. At Plaintiff's election, statutory damages for infringement of each separate copyright of up to One Hundred Fifty Thousand Dollars ($150,000.00) per copyright infringed for Defendants' willful copyright infringement up to and including the present date of May 10, 2024, and beyond if infringement continues and as set forth in 17 U.S.C. § 504;

3. That Defendants be required to account for and pay over to Plaintiff the actual damages in the amount of Five Million Four Hundred Thousand Dollars and No/100 ($5,400,000.00) suffered by Plaintiff as a result of at least 36 infringements at One Hundred Fifty Thousand Dollars ($150,000.00) for each infringement, and any profits of the Defendants attributable to the infringement of Plaintiff's copyright or exclusive rights under copyright and to pay such damages to Plaintiff as this Court shall appear just and proper within the provisions of the Copyright Act;

4. That Defendants be required to account for and pay over to Plaintiff, Defendants' profits, otherwise known as Author Royalties, calculated pursuant to the Xulon Press Publishing

Agreement.

5. For an award of costs under 17 U.S.C. § 505 or as otherwise provided by law;

6. For an award of applicable attorneys' fees pursuant to 17 U.S.C. § 505;

7. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

8. For such other and further relief as the Court deems just and proper.

Dated: May 10, 2024

Respectfully submitted,

_____
**SANDRA EKPENYONG,** *Pro Se*
9672 Celtic Place
Waldorf, MD 20601
E: Sandrae3@icloud.com
P: (301) 283-1135

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues so triable.

Dated: May 10, 2024

Respectfully submitted,

_____
**SANDRA EKPENYONG,** *Pro Se*
9672 Celtic Place
Waldorf, MD 20601
E: sandra_ekpenyong@yahoo.com
P: (301) 283-1135